UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES**<br><br>v.<br><br>**CINDY YOUNG,**<br><br>Defendant. | Case No. 21-cr-241 |

## MOTION IN LIMINE TO EXCLUDE UNAUTHENTICATED VIDEO

Defendant Cindy Young, by and through counsel, hereby files this motion in limine to exclude and prevent the Government from showing the jury a video found at https://www.youtube.com/watch?v=L5EfNYprOuo&t=2170s (hereinafter referred to as the "Video").

### INTRODUCTION

The Government has provided a link to an open source Youtube video of unknown origin. The person who took the video only identifies himself as "Sam from Inforwars.com" (hereinafter "Sam"). It appears that Sam filmed the Video using some sort of Go-Pro or other camera that he wore on his person, like police body camera, because the Video shows Sam's point of view, but at no point does Sam ever come into the picture so that he can be identified. Sam's voice is heard narrating the Video throughout, but it cannot be verified that Sam actually spoke contemporaneously with the Video, as it purports, or if the voiceover was added at a different time.

The Video is 44 minutes and 4 seconds long, but Ms. Young only appears in the Video for literally a single second, from time stamp 35:59 to 36:00. Ms. Young is not seen in the rest of the Video at all, and in fact, it can easily be shown that Ms. Young and Sam were not in the same room or even on the same floor of the Capitol for most of Sam's journey through the Capitol,

with the exception of less than 2 minutes, from time stamp 34:29 to 36:00, when it appears that they may have been in the same room, but then separated from each other.

For the two minutes of the Video inside the Capitol that may be relevant to Ms. Young's case, there is reliable CCTV and body camera footage that can be used as evidence instead. On the other hand, the Video is highly prejudicial, contains an unreliable narrator, and is riddled with inadmissible hearsay. For those reasons, the Video should be excluded from trial, with perhaps the exception of the portion of the video where Ms. Young is known to be in the vicinity, and even that portion should only be allowed without the unverified audio.

**Outside of the two minutes where Ms. Young and "Sam" were allegedly in the same area, the Video should be excluded because it has no probative value.**

It can be easily shown that the person taking the Video was not in the vicinity where the Government alleges that Ms. Young was. For the sake of argument, several assumptions are made, which Ms. Young does not concede or stipulate to at this time: (1) assume the authenticity of the Video taken by "Sam from Inforwars;" (2) assume that the Video is continuous and was not edited by "Sam" or by anyone else before it was posted on Youtube; (3) assume that the person who appears in the Video for one second at timestamp 35:59 is Ms. Young; and (4) assume that the person the Government alleges to be Ms. Young in the official CCTV video is in fact Ms. Young.

Ms. Young is accused of entering through the Senate Wing Door at exactly 2:22:56 p.m. ECF No. 1-1, at 5, Image 5.[1] The Senate Wing Door is on the First Floor of the Capitol.[2] It is

---

[1] Image 5 is a still image from Camera 102. The Committee on House Administration Subcommittee on Oversight (the "Committee") released some of the CCTV footage from January 6 on Rumble.com. The video where the Government's image was taken from is from Camera 102, Senate Wing Door near S139, starting from January 6, 2021, at 2:20:18 p.m. The person that the Government alleges to be Ms. Young enters the building at approximately 2 minutes and 38 seconds, which puts the time of entry into the building at approximately 2:22:56 p.m. https://rumble.com/v4er908-0102uscs01senatewingdoornears139-2021-01-06-14h20min18s087ms.mp4.html?playlist_id=C6QuZjinSwE.
[2] Filed under seal are Exhibits 1 and 2, which are maps of the First and Second Floors of the Capitol respectively,

unknown exactly when Sam entered the building because his identity is unknown. What is known is that the Video shows Sam enter the building through the Senate Wing Doors right behind a man wearing a brown jacket with a grey hood, at time stamp 12:50, just as the man with the brown and grey jacket raises his arms in the air. That man can be seen on the official CCTV entering the building and raising his arms in the same manner at exactly 2:18:20 p.m.[3] Accordingly, Sam entered the building almost 5 minutes before Ms. Young.[4]

    Sam's Video shows him enter through the west, turn right, and walk southbound with a large crowd down a hallway that leads to the room known as the Crypt. Sam entered the Crypt about a minute later at approximately 2:19 p.m., still almost 4 minutes before Ms. Young entered the building. Sam remained in the Crypt until approximately 2:27 p.m. He then left the Crypt and walked down another hallway, but then returned to the Crypt at around 2:32 p.m. At approximately 2:33 p.m., he climbed a set of stairs to the Second Floor of the Capitol. When he reached the top of the stairs, he emerged on the Second Floor just outside the area that contains the office of the speaker of the house, and then entered the room referred to as the "Rotunda." From 2:33 until 2:39, Sam lingered in the Rotunda. At around 2:39, Sam walked through a set of velvet ropes that formed a path going north to south across the Rotunda and leading into the room referred to as "Statutory Hall" that is to the south of the Rotunda. He exited the Rotunda and entered Statutory Hall. The path of velvet ropes continued across Statutory Hall, leading to

---

with the location of CCTV cameras, including the cameras relevant to this motion: 102 – Senate Wing Door; 960 – Rotunda North; 259 – Statutory Hall Connector.

[3] See the Committee's Rumble channel, Camera 102, Senate Wing Door near S139, starting from January 6, 2021, at 2:11:04 p.m, The man with the brown and grey jacket can be seen entering the doors and raising his arms at approximately 7 minutes and 16 seconds, which puts his entry at approximately 2:18:20.
https://rumble.com/v4er8vn-0102uscs01senatewingdoornears139-2021-01-06-14h11min04s377ms.mp4.html?playlist_id=C6QuZjinSwE.

[4] Assuming that "Sam's" Video was accurately and continuously taken in real time without interruption or editing, the time stamps on the Video can be converted into Eastern Standard Time, so that his entrance at the building at time stamp 12:50, can be converted to approximately 2:18:20 p.m. Henceforth, all time will be referred to in EST.

an area referred to as "Statutory Hall Connector." Sam entered the Statutory Hall Connector about a minute later and encountered a large crowd at about 2:40. At approximately 2:42, Sam panned the camera around the crowd, and Ms. Young can be seen standing against a wall for one second, but just as soon as she enters the frame, she exits to the left. Sam then goes to a different area of the Capitol and witnesses the shooting of Ashli Babbit at 2:44. The video ends with an abrupt cut to an advertisement for nutritional supplements for sale on "Infowars.com."

Ms. Young entered the Capitol through the Senate Wing Doors 5 minutes after Sam, at almost 2:23 p.m. Instead of following the crowd to the south and entering the Crypt, Ms. Young turned east and climbed the Supreme Court Stairs at approximately 2:24, which led her to the Second Floor just outside the Rotunda. Ms. Young entered the Rotunda at 2:25:51, while Sam was filming in the Crypt on the First Floor.[5] Ms. Young spent about one minute in the Rotunda; she walked southbound through the path formed by the velvet ropes into Statutory Hall before the clock struck 2:27. Ms. Young is next seen traveling southbound between the velvet ropes in Statutory Hall at 2:27:39. She went straight through Statutory Hall, and entered the area known as the "Statutory Hall Connector" approximately 30 seconds later, just after the clock struck 2:28.[6]

All in all, it took Ms. Young just over 5 minutes to walk from the Senate Wing Door, up the Supreme Court stairs to the Second Floor, and through the velvet roped path leading through the Rotunda and Statutory Hall, until she ended up at the Statutory Hall Connector at 2:28 p.m. All the while, Sam, who had entered the building 5 minutes prior to Ms. Young, was on the First

---

[5] See the Committee's Rumble channel, Camera 960, Rotunda North, January 6, 2021, starting at 2:20:01 p.m. The person the Government alleges to be Ms. Young can be seen entering the Rotunda at approximately 5 minutes and 51 seconds, which puts her entry into the Rotunda at approximately 2:25:52. https://rumble.com/v4rc1tf-0960usc02rotundanorth-2021-01-06-14h20min01s463ms.html?playlist_id=RF9Cak83W2Q

[6] See the Committee's Rumble channel, Camera 259, Statutory Hall Connector, January 6, 2021, starting at 2:20:01,

Floor in the Crypt. Ms. Young remained at the Statutory Hall Connector for 12 minutes before Sam arrived, and they only remained in the area together for about 2 minutes, from 2:40 to 2:42. At 2:42, Ms. Young parted from Sam and walked to the South Door Vestibule where she exited at 2:48. Sam went in a different direction and witnessed the tragic shooting of Ashli Babbit at 2:44.

There is no probative value to the 40 minutes of Video that have nothing to do with Ms. Young's case. To the extent that the Government claims there is probative value, the probative value is outweighed by the potential prejudice to Ms. Young that is set forth below. Additionally, as set forth below, the narration is of questionable authenticity and contains inadmissible hearsay. Accordingly, other than the 2 minutes in the Statutory Hall Connector, the Video should be excluded because it lacks any probative value, or else any probative value is outweighed by its potential prejudice and by other considerations that will be set forth below.

**The portions of the Video that do not include Ms. Young are unfairly prejudicial and/or contain inadmissible hearsay.**

As set forth above, the probative value of the portions of the video that do not include Ms. Young is minimal at best. On the other side of the Rule 403 balancing scale, the potential for prejudice is great. For example:

- **The Video has a banner throughout that reads "THERESISTANCE.VIDEO."** This is inadmissible hearsay with no exception as it is an out of court statement brought for the truth of the matter asserted. Further, it can be potentially prejudicial as it implies that Ms. Young or others were part of a "resistance." *If any portion of the Video is allowed to be shown at trial, this banner should be redacted.*

- **The narrator frequently mentions that he is a "journalist with Infowars.com" and implies that he is associated with Alex Jones.** *E.g.*, 1:26 ("I have no idea where Alex

is."). The narrator's assertion that he is a journalist affiliated with Alex Jones and Inforwars.com are all inadmissible hearsay as they are out of court statements offered for the truth of the matter asserted. Further, references to Infowars.com are prejudicial and outweigh any probative value. Infowars.com is a controversial conspiracy theory website founded by Alex Jones, who was ordered to pay over $1 billion dollars to the families of the child victims of the Sandy Hook Elementary School Shooting. That case is widely known by the public and jurors may have intense negative feelings about Alex Jones and Infowars.com. Any mention may cause the jurors to unfairly associate Alex Jones or Infowars.com with Ms. Young.

- **The narrator makes several statements about the Capitol and/or the surrounding conditions that are based on reports from others and/or are not supported by the Video.** For instance, at 0:46, he says he "heard reports of rubber bullets," and at 4:00, he says he "heard a couple of blasts of tear gas, apparently," when no shots or blasts can be heard, and there are no signs of people reacting as if they were being shot or blasted with tear gas. At 11:50, he says, "this is not a peaceful protest," when there was no evidence that he witnessed any violence, and earlier in the video, at 0:35, he says, "I haven't seen any violence." These and similar statements are inadmissible hearsay, such that, for instance, it is inadmissible as evidence that there were rubber bullets, tear gas, or violence. These out of court statements will also prejudice Ms. Young because the jury will be led to believe that Ms. Young must have been aware of "rubber bullets" when in fact there is no evidence that she was.

- **The narrator makes inflammatory statements.** For example, between 4:50 and 6:50, the narrator says inflammatory statements such as, "we are taking back the Capitol right

now! January 6, 2021," "people here are willing to die for their country," it seems like 1776," "this is crazy," and "I have never seen anything like this in my whole life." These statements are hearsay and prejudicial and have no probative value with regard to Ms. Young's case. Ms. Young was not in the vicinity. There is no evidence that Ms. Young was even at the Capitol while this was happening or that she ever traversed this area of the Capitol grounds. There is no evidence that Ms. Young made statements like these or heard statements like these. Further, the narrator makes these hyperbolic statements that are unsupported by the Video. Without audio the Video does not look worse than any of the dozens of mostly peaceful protests that occurred throughout 2020, so it is not credible for a self-proclaimed journalist in 2021 to say that he has never seen anything like that in his whole life. The narration is highly prejudicial and inflammatory and should not be allowed under any circumstances.

- **The narrator makes several statements about his personal political beliefs that are irrelevant and/or inadmissible under Rule 701(a).** For example, the narrator says, "the mainstream media is smearing Trump supporters." This can be prejudicial to jurors who have animus towards "Trump supporters" or who have affinity towards the "mainstream media." It also violates rule 701(a) as it is an opinion that is not "rationally based on the witness' perceptions."

- **The Video includes highly prejudicial images that are not probative to Ms. Young's case.** For instance, at 3:44 a confederate flag can be seen waiving outside the Capitol. This is highly prejudicial and outweighs any probative value. It will surely inflame the passions of the jury and is therefore inadmissible.

- **The Video shows chaos in the Crypt and on the First Floor that Ms. Young never saw and was not aware of.** All of the Video inside the Crypt is highly prejudicial because it falsely gives the impression that Ms. Young could have known what was going on in the Crypt, when she was not even in the building at the time and had never been to the Crypt.

- **The Scene in the Rotunda was completely different from anything that Ms. Young experienced.** When the narrator was in the Rotunda it was filled with protestors and the velvet ropes were knocked down. When Ms. Young was in the Rotunda, there were only a handful of protestors and the ropes were almost completely intact. Showing the Rotunda portion of the Video is not probative since Ms. Young had already passed through the Rotunda and never returned. Further, it will confuse the jury as they may not understand the chronology and mistakenly think that the ropes were down when Ms. Young was in the Rotunda.

- **The shooting of Ashli Babbit is highly prejudicial.** The end of the Video shows the tragic shooting of Ashli Babbit that occurred at 2:44. By that time, Ms. Young had already descended a flight of steps to the First Floor and was on her way to the South Door Vestibule where she exited at 2:48. She had no knowledge of the shooting. The shooting and the surrounding circumstances would be prejudicial to the extreme. The Government's only purpose in showing the shooting would be to inflame the passions of the jury, and it should be prevented from doing so.

**The Audio that accompanies the Video is of questionable authenticity and should not be allowed without further authentication.**

As stated above, the Audio, in its entirety, is hearsay and any audio can only be admitted if it falls under one of the exceptions. The Government bears the burden of showing that the proffered statement fits into one of the exceptions to the rule outlawing hearsay. *United States v. Glenn*, 473 F.2d 191, 197 (D.C. Cir. 1973). Accordingly, the default should be that the Video, if allowed at all, must be shown without audio, and for every statement that the Government seeks to admit, the Government must provide in its response to this motion an exception and a reason as to why the particular statement fits that exception.

In addition to the hearsay rules under the 800s, the Government must also contend with the issue of authentication under the 900s. The Video was found on Youtube. The Government has not provided sufficient information as to who found this video and how the Government knows that the video has not been altered or that the narration was not added after the fact. The requirement of authentication is a condition precedent to admissibility. If the Government cannot provide evidence of the Video's authenticity, it is inadmissible.

There are legitimate reasons to suspect that the Video has been altered, or at least edited, or that the narration was added after the fact. The narrator claims he works for the conspiracy theory website Infowars.com. The narrator cannot be trusted if he is telling the truth, and he certainly cannot be trusted if he is lying. According to the youtube page, the video was not posted by Infowars.com, it was posted by a mysterious group of vigilante hackers called "Sedition Hunters" who reside in the shadows and use voice altering technology and claim to use sophisticated facial recognition technology to identify January 6 defendants, which explains how Ms. Young was identified in this video even though she only appears for one second.[7] The Court cannot allow the use of a mysterious video anonymously posted on Youtube by a shadow group

---

[7] https://www.youtube.com/watch?v=iww9V6cAVBw.

of cyber vigilantes who claim to have access to sophisticated technology that even the Government does not have access to.

This Video is highly suspect and should not be allowed into evidence. To the extent that it is allowed, the government should only be permitted to show the portion of the video that includes Ms. Young, and even then, the Government should not be permitted to play the video with the audio.

## CONCLUSION

For the foregoing reasons, the Video should not be allowed into evidence. To the extent it is allowed, the Government should be precluded from showing any portions other than the portions where Ms. Young appears and without the audio.

Dated: May 23, 2024                                  Respectfully submitted

/s/ Jonathan Gross
Jonathan Gross, Esq.
BAR ID: MD 0126
2833 Smith Ave, Suite 331
Baltimore, MD 21209
(443) 813-0141
jonathansgross@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing is being served on opposing counsel via email on

May 23, 2024

/s/ Jonathan Gross