## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **No. 23-cr-241 (GMH)** |
| ) | |
| **CINDY YOUNG,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

### MEMORANDUM OPINION AND ORDER

Defendant Cindy Young, who is charged with four misdemeanors in connection with the events at the Capitol on January 6, 2021, has filed a motion to dismiss the charges against her arguing that, as a "January 6 defendant," she has been selectively prosecuted.  ECF No. 33 at 2. The motion is denied.

### I.       BACKGROUND

As Chief Judge Boasberg has described (rather prosaically) the events of that day:

> On January 6, 2021, a Joint Session of the United States Congress convened at the Capitol to certify the vote of the Electoral College of the 2020 Presidential Election. While the certification process was underway, a large crowd, including [Defendant] . . . passed through restricted grounds and entered the Capitol building.

*United States v. Bennett*, No. 21-cr-312, 2023 WL 6847013, at *1 (D.D.C. Oct. 17, 2023). Defendant was originally charged by criminal complaint on June 21, 2023, with violations of 18 U.S.C. § 1752(a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(D) and (G).  *See generally* ECF No. 1. Section 1752(a)(1) criminalizes "knowingly enter[ing] or remain[ing] in any restricted building or grounds without lawful authority to do so," 18 U.S.C. § 1752(a)(1); Section 1752(a)(2) criminalizes "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engag[ing] in disorderly or disruptive conduct in, or within such

proximity to, any restricted building or grounds," *id.* § 1752(a)(2).  Section 5104(e)(2)(D) prohibits

willfully and knowingly "utter[ing] loud, threatening, or abusive language, or engag[ing] in

disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings

with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either

House of Congress," 40 U.S.C. § 5104(e)(2)(D); and Section 5104(e)(2)(G) proscribes willfully

and knowingly "parad[ing], demonstrat[ing], or picket[ing] in the Grounds or any of the Capitol

Buildings," *id.* § 5104(e)(2)(G).  She has since been charged by information for those same crimes.

*See* ECF No. 12.  Specifically, the government alleges that

> On January 6, 2021, the defendant was among the crowd who breached the
> restricted perimeter and entered the U.S. Capitol Building.  After entering the
> restricted ground, Defendant Young immersed herself in the crowd gathering on
> the West grounds, where with the assistance of two rioters was pulled up, scaling
> the Northwest staircase which leads to the Upper West Terrace.  At approximately
> 2:22 p.m., she entered the U.S. Capitol Building through the Senate Wing doors.
> Young traveled from the first floor of the U.S. Capitol Building, to the second
> where she passed through the Rotunda and Statuary Hall before joining the growing
> crowd directly outside the House of Representative's Chamber—all while carry a
> political flag.  Inside the House, members and staff had to be evacuated due to the
> crowd's presence.  Outside the House floor, the crowd chanted "Stop the Steal" and
> "USA" before overrunning officers and pushing forward to the House Main Doors.
> Defendant Young was amongst the crowd as it surged forward towards the Main
> door. Here, the crowd chanted "break it down!" while referring to the final House
> Main Doors.  Half of the crowd, including Young, eventually left the House Main
> Doors and made their way to the Speaker's Lobby where members of the crowd
> attempted to access the floor by smashing through the lobby door windows.  During
> subsequent interviews, the defendant admitted that she had entered the U.S. Capitol
> Building on January 6, 2021, with the intended goal to get to the hearing room to
> have her voice heard.

ECF No. 45 at 2.

Plaintiff now seeks to have all charges against her dismissed.  She contends that the

government has treated supporters of former President Trump who were involved in the events at

the Capitol on January 6, 2021, more harshly than "protestors at other events who expressed

different political viewpoints," such as those protesting during the confirmation hearings for

Justice Kavanaugh in 2018, those protesting the death of George Floyd in 2020, and those involved in recent pro-Palestinian protests.  ECF No. 33 at 2, 5–6.  The alleged selective prosecution, she asserts, infringes on her First Amendment right to freedom of speech.  *See id.* at 15.

## II.     LEGAL STANDARD

"[T]he prosecution (and non-prosecution) power is a vital aspect of the executive power. . . .  Prosecutorial discretion lies within the 'special province of the Executive Branch, inasmuch as it is the Executive who is charged by the Constitution to 'take Care that the Laws be faithfully executed.'"  *Frederick Douglass Found. v. District of Columbia*, 82 F.4th 1122, 1136 (D.C. Cir. 2023) (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)).  As such, it is generally beyond the purview of the judiciary to review charging decisions made by the executive.  *See id.* at 1136–37 ("As we have explained, the 'Executive's charging authority embraces decisions about whether to initiate charges, whom to prosecute, which charges to bring,' and '[i]t has long been settled that the Judiciary generally lacks authority to second-guess those Executive determinations.'" (quoting *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 737 (D.C. Cir. 2016))).  However, "a prosecutor's discretion is 'subject to constitutional constraints,'" among them that "the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'"  *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (first quoting *United States v. Batchelder*, 442 U.S. 114, 125 (1979), and then quoting *Oyler v. Boles*, 368 U.S. 446, 456 (1962)).

To make out a selective prosecution claim under the Equal Protection component of the Fifth Amendment, the defendant must establish both "that the prosecutorial policy 'had a discriminatory effect'" and that it "had 'a discriminatory purpose.'"  *United States v. Judd*, 579 F. Supp. 3d 1, 3 (D.D.C. 2021) (quoting *Armstrong*, 517 U.S. at 465).  However, the D.C. Circuit has

recently held that claims of selective prosecution based on the First Amendment, such as this one

here, do not require a showing of discriminatory intent. *See Frederick Douglass Found.*, 82 F.4th

at 1143–44. Nevertheless, the standard for proving such a claim is still "particularly demanding":

"To make out a selective enforcement claim, the target of enforcement must displace 'the

presumption that a prosecutor has acted lawfully'" by "demonstrat[ing] [s]he was singled out for

enforcement 'from among others similarly situated.'" *Id.* (internal citations and some quotation

marks omitted) (first quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489

(1999), and then quoting *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000)).

Courts "'narrowly' interpret the phrase 'similarly situated.'" *United States v. Padilla*, No. 21-cr-

214, 2023 WL 1964214, at *5 (D.D.C. Feb. 13, 2023) (quoting *Judd*, 579 F. Supp. 3d at 4).

"Individuals 'are similarly situated when their circumstances present *no distinguishable legitimate*

*prosecutorial factors* that might justify making different prosecutorial decisions with respect to

them.'" *Frederick Douglass Found.*, 82 F.4th at 1143 (emphasis added) (quoting *Branch*

*Ministries*, 211 F.3d at 145). "Determining whether a plaintiff is similarly situated to those not

prosecuted will be a fact-intensive and case-specific comparative inquiry" and may take into

account factors such as "the strength of the case, the prosecution's general deterrence value, the

Government's enforcement priorities, and the case's relationship to the Government's overall

enforcement plan." *Id.* at 1137–38 (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)).

So, a defendant "may be similarly situated" to a comparator where the defendant establishes that

the comparator "committed the same basic crime in substantially the same manner as the

defendant—so that any prosecution of that individual would have the same deterrence value and

would be related in the same way to the government's enforcement priorities and enforcement

plan" and that the government's evidence against the comparator "was as strong or stronger than

that against the defendant." *United States v. Stone*, 394 F. Supp. 3d 1, 31 (D.D.C. 2019) (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)); *see also Armstrong*, 517 U.S. at 470 (finding that the defendant had not presented "some evidence tending to show the existence of the essential elements" of a selective-prosecution claim because he "failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted" (internal citation omitted) (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974))).

## III.    DISCUSSION

Defendant does not clear the demanding bar for successfully establishing selective prosecution. She suggests three comparable incidents or clusters of incidents: (1) protests during the confirmation hearings of Justice Kavanaugh, (2) protests in 2020 over the death of George Floyd, and (3) recent "pro-Palestinian protest[s]." ECF No. 33 at 5–6, 10–14. None of her arguments succeed.

### A.    Protests Related to Justice Kavanaugh's Confirmation

Defendant contends that, "had she engaged in the same conduct [that she engaged in on January 6, 2021] during Justice Kavanaugh's confirmation hearings, she would not have been charged with four misdemeanors," but instead would have sentenced to a $50 fine like those protesting the confirmation. ECF No. 33 at 5. She cites an article from Yahoo! Entertainment about arrests of individuals for unlawfully demonstrating at the Hart Office Building during Justice Kavanaugh's confirmation hearings who were sentenced to a $50 fine and an article from the New York Times citing a statement from the Capitol Police that those who "illegally demonstrate/disrupt Congress typically are released after they pay a $50 fine." *See id.* at 5 & nn.8–

9; ECF No. 39-1 at 1; Here's the Penalty Amy Schumer and Emily Ratajkowski Will Face for Arrest at Anti-Kavanaugh Protest, https://www.yahoo.com/entertainment/penalty-amy-schumer-emily-ratajkowski-004137475.html   [https://perma.cc/J3XL-SWU7].   She also names two individual protesters against Justice Kavanaugh—Ana Maria Anchila and Maria Gallagher—who are allegedly similarly situated to her, except that, according to Defendant, "they had the good fortune to participate in a protest expressing a viewpoint favored by the [g]overnment."  ECF No. 33 at 6.

That last assertion is peculiar.  Justice Kavanaugh was nominated by former President Donald Trump, then the head of the Executive Branch of the federal government, and his confirmation hearings (and the attendant protests) took place during that administration. Defendant does not explain how *protesting* Justice Kavanaugh's confirmation "express[ed] a viewpoint favored" by that administration.  In any case, Defendant makes no attempt to engage in the "fact-intensive and case-specific comparative inquiry," *Frederick Douglass Found.*, 82 F.4th at 1138, necessary to show that these comparators "committed the same basic crime in substantially the same manner" as she did, *Stone*, 394 F. Supp. 3d at 31 (quoting *Smith*, 231 F.3d at 810).  Nor had she tried would she have been likely to succeed.  Multiple judges in this District have rejected a comparison between the protests against Justice Kavanaugh's confirmation and the events on January 6.  For example, in *United States v. Brock*, Judge Bates found that a defendant charged with the same crimes as Defendant is here (and two additional ones) had not shown that defendants participating in "protests connected to Justice Kavanaugh's Supreme Court confirmation" were similarly situated to the defendant before him.  628 F. Supp. 3d 85, 89, 102 (D.D.C. 2022), *aff'd*, No. 23-3045, 2023 WL 3671002 (D.C. Cir. May 25, 2023).  He explained:

> As other courts have found, the mob on January 6th—of which the government
> alleges [the defendant] was a part—"endangered hundreds of federal officials in the

> Capitol complex," including Members of Congress and their staffs, Vice President
> Pence, and the United States Capitol Police. . . .   The decision to file and pursue
> more serious charges based on the threat to government officials and employees is
> certainly a legitimate prosecutorial consideration.

*Id.* at 102 (quoting *Judd*, 579 F. Supp. 3d at 8).  The defendant there, like Defendant here, "does not describe any similarly situated defendants given the difference in violence, threat to citizen safety, and scope."  *Id.* at 103; *see also* Opinion and Order at 4–5, *United States v. Groseclose*, No. 21-cr-311 (CRC) (D.D.C. Oct. 27, 2023) ("Other courts have considered and rejected many of these same arguments before, [including that demonstrators at Justice Kavanaugh's confirmation hearings are similarly-situated to defendants in January 6 cases,] finding that these protesters were not similarly situated to the rioters who stormed the Capitol on January 6, 2021. This Court will not revisit this well-trodden ground, as it agrees in full that it is a tall task to find similarly situated individuals here considering that the January 6 riot was an unprecedented assault on the Capitol and on our democratic institutions."); *United States v. Griffin*, 549 F. Supp. 3d 49, 58 (D.D.C. 2021) ("Griffin also points to the numerous uncharged protestors who broke through USCP barricades to occupy the Capitol steps on the eve of Justice Kavanaugh's Senate confirmation vote.  Disparate charging decisions in similar circumstances may be relevant at sentencing.  But this is not a basis to dismiss the charges." (internal citations omitted)).

### B.    Protests Related to the Death of George Floyd

Defendant next turns to protests in 2020 over the death of George Floyd.  She first argues that the government has treated participants in the events of January 6, 2021 differently than protestors involved in "the George Floyd riots" in other cities, asserting that "the Government has charged hundreds of January 6 defendants . . . with 18 U.S.C. § 231(a)(3)"—which prohibits "obstruct[ing], imped[ing], or interfer[ing] with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of

a civil disorder"—but has charged only "a total of 65 protestors [involved in protests related to George Floyd] with the same charge."  ECF No. 33 at 10.  She points to "the cheering mob" outside a Minneapolis police station that "hurled fireworks," watched as the station "burned in flames," and "obstructed, impeded, and interfered with [law enforcement] while responding to the civil disorder."  *Id.* at 10–11.  But Defendant here has not been charged with a violation of 18 U.S.C. § 231(a), a felony that carries a maximum sentence of five years; she has been charged with two Class A misdemeanors (18 U.S.C. § 1752(a)(1) & (2)) and two Class B misdemeanors (40 U.S.C. § 5104(e)(2)(D) & (G)) with maximum sentences of one year and of six months, respectively.  That is, the protesters Defendant points to were charged *more* harshly than she and it is not clear how they can be useful comparators to show that she was over-prosecuted based on her political beliefs.[1]

Defendant then asserts that "[i]n each and every city where George Floyd/Black Lives Matter riots occurred, there were literally thousands of similarly situated comparators who were not arrested or charged at all."  ECF No. 33 at 11.  The Court is skeptical that such generalized, unsupported assertions can clear the high bar required to make out a selective prosecution claim.  *See, e.g.*, *Armstrong*, 517 U.S. at 470 (finding that the defendant had not presented  "some evidence tending to show the existence of the essential elements of" a selective-prosecution claim because he "failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted" (internal citation omitted) (quoting *United States v. Berrios*, 501 F.2d at 1211)); *Berrios*, 501 F.2d at 1211 (finding

---

[1] For that same reason, the individual Defendant identifies in her reply brief, Montez Terriel Lee, Jr., *see generally* ECF No. 56, does not help her cause.  Lee was charged with and pleaded guilty to arson in violation of 18 U.S.C. § 844(i), admitting that on May 28, 2020, apparently during violent protests over the death of George Floyd, he broke into a pawn shop in Minneapolis, "poured accelerant around the pawn shop, and lit the accelerant on fire," destroying the business and possibly causing the death of an individual.  Plea Agreement and Sentencing Stipulations, *United States v. Lee*, No. 20-cr-168 (D. Minn. July 22, 2021), ECF No. 55.  Lee's case has precious little in common with Defendant's and he was charged and found guilty of a much more serious crime than any at issue here.

that the defendant had not met his burden of providing sufficient evidence to engage in discovery

related to a selective prosecution claim where he failed to "name any unprosecuted violators");

*Padilla*, 2023 WL 1964214, at *6 (rejecting a selective prosecution claims where the defendant

failed to "identify any particular person" who was similarly situated (quoting the record)); *United*

*States v. Avenatti*, 433 F. Supp. 3d 552, 564 (S.D.N.Y. 2020) (stating that "[m]ere assertions and

generalized proffers on information and belief are insufficient" evidence of selective prosecution

(quoting *United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992))); *United States v. Barnes*, No. 18-

mj-54, 2019 WL 5538550, at *8 (D.D.C. Oct. 24, 2019) (finding that the defendant's "conclusory

and unsupported assertion that unidentified protesters were not arrested or prosecuted in federal

court" did not constitute evidence "establish[ing] a colorable basis for discriminatory effect"

(quoting *Armstrong*, 517 U.S. at 465)); *cf. Frederick Douglass Found.*, 82 F.4th at 1143

("Determining whether a plaintiff is similarly situated to those not prosecuted will be a fact-

intensive and case-specific comparative inquiry.").[2]   In any case, even assuming that such

---

[2] The Court does not read *Frederick Douglas Foundation* to abrogate the requirement that, when a defendant is seeking the dismissal of charges against her on a theory of selective prosecution, she will usually be required to identify specific comparators and to engage in the "fact-intensive and case-specific comparative inquiry," 82 F.4th at 1138, necessary to show that those comparators "committed the same basic crime in substantially the same manner" as she did, *Stone*, 394 F. Supp. 3d at 31 (quoting *Smith*, 231 F.3d at 810).  To be sure, in that case the D.C. Circuit did not focus on specific individuals from the appellants' membership who had been treated differently from individuals with a different political viewpoint, but that case arose in a different context.  There, two anti-abortion groups sued under 42 U.S.C. § 1983, claiming that the District of Columbia "discriminated on the basis of viewpoint by selectively enforcing the [defacement] ordinance against those who chalked 'Black Pre-Born Lives Matter'" on public sidewalks, "but not against those who painted, marked, and chalked 'Black Lives Matter.'" *Frederick Douglass Found.*, 82 F.4th at 1145.  Here, Defendant is seeking to dismiss criminal charges brought against her, not to enjoin enforcement of an ordinance against advocacy groups.  And, even if *Frederick Douglass Foundation* could be read to stand for the proposition that a criminal defendant needs to identify only that a group of people with a particular political viewpoint is being charged differently than another group with a different political viewpoint, it also establishes that the defendant must still demonstrate that the two groups are similarly situated.  In that case, the D.C. Circuit found that the appellants were "similarly situated to the Black Lives Matter advocates" based on the following "salient similarities between the actions of the two groups":

> [B]oth groups gathered about matters of public concern and sought to disseminate a political message, in one instance that "Black Lives Matter," and in the other that "Black Pre-Born Lives Matter."  The locations of the gatherings were also the same: namely public streets and sidewalks in the District.  And the events were proximate in time, held during the summer of 2020 when public attention focused on the problems of racial justice and police violence against black Americans.

conclusory assertions *could* constitute evidence of discriminatory effect, here they don't.  Again, a defendant must show that a comparator "committed the same basic crime in substantially the same manner as the defendant" and was treated more leniently.  *Stone*, 394 F. Supp. 3d at 31 (quoting *Smith*, 231 F.3d at 810).  Violations of Section 1751(a)(1) and (2) require "enter[ing] or remain[ing] in any *restricted building or grounds* without lawful authority to do so" and "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engag[ing] in disorderly or disruptive conduct in, or *within such proximity to, any restricted building or grounds*," 18 U.S.C. § 1751(a)(1), (2) (emphasis added); the charged violations of Section 5104(e)(2) require the prohibited conduct to occur on the Capitol grounds or in a Capitol building, *see* 40 U.S.C. § 5104(e)(2)(D), (G).  And, as the government points out, "no rioter" in the incidents mentioned "breached a building where the Vice President was present to certify the 2020 Presidential Election and came within feet of the very room where the certification was taking place," as it alleged Defendant did on January 6.  ECF No. 49 at 12; *see also id.* at 10 (noting that in order to be a "restricted area" as relevant to Defendant's charges under Section 1752(a), the area must contain a Secret Service protectee); 18 U.S.C. § 1752(c)(1) (defining "restricted building or grounds").

Finally, as above, numerous judges in this District have found that the protests surrounding the death of George Floyd are not like events of January 6.  As Judge McFadden explained in

_____

Many Black Lives Matter protests occurred in May and June, but at least one event occurred as late as August 16.  The Foundation held its first rally between these dates, on August 1.

82 F.4th at 1138.  Significantly, too, the D.C. Circuit relied on the fact that there was "strong evidence," including photographs, that both groups violated the same ordinance.  *See id.*  Here, Defendant has not attempted to make that sort of detailed showing that she or her group—identified as "supporters of President Trump," ECF No. 33 at 8—are similarly situated to groups protesting the confirmation of Justice Kavanaugh, the death of George Floyd, or the war in Gaza.

relation to riots in Portland, Oregon (which, according to Defendant, were "the worst" of the disturbances related to the death of George Floyd, ECF No. 33 at 10):

> Although both Portland and January 6 rioters attacked federal buildings, the Portland defendants primarily attacked at night, meaning that they raged against a largely vacant courthouse.
>
> In contrast, the January 6 rioters attacked the Capitol in broad daylight. And many entered it. Thousands of congressional staffers walked the Capitol's corridors that day. So did hundreds of legislators and the Vice President, all of whom appeared for a constitutionally mandated proceeding.
>
> . . . . Members of Congress cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters.
>
> The action in Portland, though destructive and ominous, caused no similar threat to civilians.

*Judd*, 579 F. Supp. 3d at 7–8 (internal citations omitted); *see also Padilla*, 2023 WL 1964214, at *5 (similar); *Brock*, 628 F. Supp. 3d at 102–03 (similar); *United States v. Rhodes*. No. 22-cr-15, 2022 WL 3042200, at *5 (D.D.C. Aug. 2, 2022) (similar).

In short, Defendant has failed to show discriminatory effect by comparison to the incidents related to the death of George Floyd.

### C.       Pro-Palestinian Protests

Defendant's argument concerning pro-Palestinian protesters also fails. She cites four incidents she claims to be similar to the events of January 6, 2021: on October 18, 2023, pro-Palestinian protesters "flooded the Cannon House Office Building, ignoring Capitol Police's express alerts that protesters were not allowed inside the restricted area, and resisting Capitol Police for hours as they worked to clear the crowds from the Rotunda"; on November 4, 2023, thousands of individuals demonstrated in Washington, D.C., with some vandalizing the White House fence and attempting to scale it, "trespassing on restricted areas," and causing damage to other areas of the city; on November 15, 2023, a group "violently stormed DNC headquarters,

injuring six police officers" and causing lawmakers to be evacuated; and on January 13, 2023, a group gathered outside the White House, "damaging security fencing and hurling objects at police." ECF No. 33 at 13–14. In those incidents, she asserts that either no or very few arrests were made. *See id.*

Defendant has again failed to show that any of these unidentified protesters are similarly situated to her. Again, Defendant fails to engage in the "fact-intensive and case-specific comparative inquiry," *Frederick Douglass Found.*, 82 F.4th at 1138, to show that some "identif[ied] . . . particular person," *Padilla*, 2023 WL 1964214, at *6, "committed the same basic crime in substantially the same manner" as she did, *Stone*, 394 F. Supp. 3d at 31 (quoting *Smith*, 231 F.3d at 810). As the government points out, *see* ECF No. 49 at 10, although Defendant asserts that some protesters entered "restricted" areas, there is no evidence that they were "restricted building[s] or grounds" as defined in Section 1752, which requires that they were a "posted, cordoned off, or otherwise restricted area" of the White House or its grounds, the Vice President's official residence or its grounds, a building or grounds where a person protected by the Secret Service "is or will be temporarily visiting," or a building or grounds "restricted in conjunction with an event designated as a special event of national significance," 18 U.S.C. § 1752(c)(1). And although the Cannon House Office Building appears to be a Capitol Building and thus covered by 40 U.S.C. § 5104(e)(2)(D) and (G), *see* 40 U.S.C. § 5101 (defining "Capitol Buildings" to include "the Senate and house Office Buildings"), Defendant has not shown that the conduct of those protesters was similar to the mob that overran the Capitol on January 6. For example, there is no showing that those who entered the Cannon House Office Building protesting the war in Gaza did so illegally or posed a similar threat as those who participated in the events on January 6, which the D.C. Circuit has described as "the most significant assault on the Capitol since the War of

1812." *Trump v. Thompson*, 20 F.4th 10, 18–19 (D.C. Cir. 2021).  In short, Defendant has not shown that there are "no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions" between Defendant and recent pro-Palestinian protestors. *Frederick Douglass Found.*, 82 F.4th at 1143 (quoting *Branch Ministries*, 211 F.3d at 145); *see also* Opinion & Order at 4–5, *Groseclose*, No. 21-cr-311 (D.D.C. Oct. 27, 2023) ("The Court . . . agrees in full that it is a tall task to find similarly situated individuals here considering that the January 6 riot was an unprecedented assault on the Capitol and our democratic institutions. . . .  It is hardly surprising that the Department of Justice made the January 6 riot an enforcement priority and has distinguished it from various other political protests.").

## IV.   CONCLUSION

Defendant has failed to meet the "particularly demanding" standard to show that she has been prosecuted for an impermissible reason.  *Frederick Douglass Found.*, 82 F.4th at 1143. Therefore, Defendant's motion to dismiss the charges against her on the basis of selective prosecution is **DENIED**.


**SO ORDERED.**

Date: June 17, 2024.

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE