**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | )   **No. 23-cr-241 (GMH)** |
| | ) |
| **CINDY YOUNG,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

On August 9, 2024, a jury convicted Defendant Cindy Young on the four counts with which she was charged: (1) entering and remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1); (2) disorderly and disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(2); (3) disorderly conduct in a U.S. Capitol building or grounds in violation of 40 U.S.C. § 5104(e)(2)(D); and (4) parading, demonstrating, or picketing in a U.S. Capitol building in violation of 40 U.S.C. § 5104(e)(2)(G).  Defendant now seeks a new trial, asserting that she was denied her Sixth Amendment right to an impartial jury.  Specifically, she takes aim at three questions in the Court's *voir dire*: two that asked whether prospective jurors had strong feelings about former President Trump, his supporters, or those who deny the validity of the 2020 presidential election and one that asked whether prospective jurors could put aside any feelings they had about the events at the Capitol on January 6, 2021, and decide this case on the evidence presented and the instructions received in court.  According to Defendant, the final question inappropriately cancelled out the prior two.  She also asserts that it was "obvious"—based on jurors' answers to the two *voir dire* questions indicating potential bias against supporters of former President Trump and election deniers—"that several jurors were dishonest" when

answering the final question.[1]  ECF No. 80 at 1–2.  Because Defendant has shown no error in the conduct of the *voir dire*, the motion is denied.

## I.    BACKGROUND

In July 2023, the government filed an Information charging Defendant with four misdemeanor counts stemming from her participation in the riot at the Capitol on January 6, 2021. *See* ECF No. 12.  She consented to trial by a magistrate judge and the case was assigned to the undersigned.  *See* ECF No. 17; Minute Entry (Dec. 21, 2023).  Trial was scheduled to begin on August 5, 2024.  *See* ECF No. 25, ¶ 1.  In the lead-up to the trial, the parties submitted proposed *voir dire* questions, *see* ECF Nos. 40, 47, and the Court engaged in a joint iterative process with counsel to finalize the list of questions to ask prospective jurors, *see, e.g.*, Email dated July 9, 2024, from the Court to counsel attaching proposed *voir dire*; Email dated August 2, 2024, from the Court to counsel attaching updated proposed *voir dire*; Email dated August 2, 2024, from Defendant's counsel to the Court re: proposed *voir dire*; Email dated August 2, 2024, from government counsel to the Court re: proposed *voir dire* (all on file with the Chambers of the undersigned).  The attorneys for both parties were also offered the opportunity to object to the proposed *voir dire* prior to bringing the venire into the courtroom to begin the process of selecting a jury; there were no objections.  *See* ECF No. 83 at 3–5.

Defendant's motion focuses on questions 30, 31, and 32 of the *voir dire*.  *See* ECF No. 80 at 1–2.  Questions 30 and 31 asked the following:

30.    Do you have strong feelings or opinions about former President Donald Trump or people who support him, whether positive or negative, that would make it difficult for you to serve as a fair and impartial juror in this case?

---

[1] The documents most relevant to this Memorandum Opinion and Order are: (1) the transcripts of the *voir dire* in this case, ECF Nos. 83–84; (2) Defendant's brief in support of her Rule 33 motion and its supporting document, ECF Nos. 80–81; and (3) the government's opposition to Defendant's Rule 33 motion, ECF No. 88.  Defendant did not submit a reply brief.  The page numbers cited herein are those assigned by the Court's CM/ECF system.

> 31.    Do you have strong feelings or opinions about persons who do not accept
> the validity of the results of the 2020 presidential election, whether positive
> or negative, that would make it difficult for you to serve as a fair and
> impartial juror in this case?

*See* ECF No. 83 at 27.  Question 32 was prefaced by an introduction:

> [M]ost of you have heard, read about or seen media coverage of the events at the
> Capitol on January 6, 2021, and you may have thoughts and opinions about those
> events.  It's only natural to have opinions about such events.  However, understand
> that I'm going to instruct the jury in this case that every defendant in a criminal
> case is presumed innocent, and that as jurors you must presume the defendant
> innocent throughout the trial unless and until the defendant is proven guilty beyond
> a reasonable doubt by the government.
>
>      That burden is on the government to prove the defendant guilty as to each
> element of the offense that the defendant is charged with and must prove each
> element beyond a reasonable doubt.
>
>      The defendant does not have to produce any evidence at trial.  She's not
> required to prove her innocence, nor is the defendant required to prove any fact in
> dispute in this case.  The law requires that jurors weigh the evidence in a case and
> reach a verdict fairly and impartially and based solely upon the admitted evidence
> and the instructions of law, which I will give to you. That will be your duty as a
> juror in this case.
>
>      So the final question is:  No matter what you have heard or seen about events
> at the Capitol on January 6, 2021, no matter what feelings or opinions you may
> have formed, do you believe you can put all of that aside and decide this case only
> on the evidence you've received in court, follow the law that I give you, and decide
> the case in a fair and impartial manner?

*Id.* at 27–28.  Only one of the jurors who found Defendant guilty—juror 1055—answered "yes"

to questions 30 and 31 and also answered "yes" to question 32.  *See* ECF No. 83 at 56 (juror 1055).

Defendant did not challenge juror 1055 for cause or use a peremptory challenge to strike that juror.

*See id.* at 63; ECF No. 84 at 51–53 (exercising peremptory challenges to excuse prospective jurors

1642, 0185, 1562, 0409, 0843, 0509, and 1707).  Prospective juror 0185 also answered yes to all

three of those questions; the Court overruled Defendant's challenge for cause.  *See* ECF No. 83 at

106, 119–20.  Prospective juror 0185 was excused on a peremptory challenge by Defendant.  *See*

ECF No. 84 at 52.  Defendant also challenged juror 0001 for cause.  *See* ECF No. 83 at 145.  That juror answered "no" to both question 30 and 31 and "yes" to question 32, but also testified to being empaneled as a juror in the trial of another defendant charged with crimes relating to the riot at the Capitol on January 6, 2021.  *See id.* at 139–41.  Defendant challenged juror 0001 for cause on the basis of that prior service and the challenge was overruled.  *See id.* at 145–46.  All jurors empaneled, including alternates, answered "yes" to question 32.  *See* ECF No. 83 at 33 (juror 1673), 56 (juror 1055), 86 (juror 0405), 97 (juror 0609), 139 (juror 0001), 147 (juror 0056), 167 (juror 0374), 187 (juror 0696), 208 (juror 0053), 214 (juror 1023), 222 (juror 1314); ECF No. 84 at 15 (juror 0499); 20 (juror 1750); 24 (juror 0551); *see also* ECF No. 84 at 50–55 (exercising peremptory challenges and identifying the empaneled jurors by juror number); ECF No. 86 at 180–81 (identifying juror 1673 and 0551, in seats 1 and 13, as alternate jurors and excusing them prior to deliberations).

After trial, Defendant discovered that the law firm at which juror 0374 works filed a brief on behalf of *amici curiae* in *United States v. Trump*, No. 23-3228 (D.C. Cir.).  *See* ECF No. 80 at 4; ECF No. 81 (under seal).  Juror 0374 answered "no" to questions 30 and 31 and "yes" to question 32.  *See* ECF No. 83 at 167.

## II.    LEGAL STANDARDS

Rule 33 of the Federal Rules of Criminal Procedure provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  A defendant "'is entitled to a fair trial but not a perfect one,' for there are no perfect trials."  *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984) (quoting *Brown v. United States*, 411 U.S. 233, 231–32 (1973)).  "[G]ranting a new trial motion is warranted only in those limited circumstances where 'a serious miscarriage of justice

may have occurred.'" *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014) (quoting *United States v. Rogers*, 918 F.2d 207, 213 (D.C. Cir. 1990)).  "A motion for a new trial is committed to the sound discretion of the trial judge, and should be reversed only for abuse or misapplication of the law." *United States v. Reese*, 561 F.2d 894, 902 (D.C. Cir. 1977).

"'Because the obligation to impanel an impartial jury lies in the first instance with the trial judge, . . . federal judges have been accorded ample discretion in determining how best to conduct the voir dire.'  That discretion extends to the 'mode and manner of proceeding,' as well as 'to the range of questions put to the prospective jurors.'" *United States v. West*, 458 F.3d 1, 6 (D.C. Cir. 2006) (alteration in original) (internal citations omitted) (first quoting *Rosales–Lopez v. United States,* 451 U.S. 182, 189 (1981); and then quoting *United States v. Robinson,* 475 F.2d 376, 380 (D.C. Cir. 1973)).  "[A]bsent abuse of [the court's] broad discretion, *and* a showing that the rights of the accused have been substantially prejudiced thereby, the trial judge's rulings as to the scope and content of voir dire will not be disturbed on appeal." *Id.* (second alteration in original) (quoting *Robinson,* 475 F.2d at 380).

In the D.C. Circuit, where a defendant seeks a new trial based on juror dishonesty during *voir dire*, she "bears the burden of showing that: (1) the Juror failed to answer honestly a material question on *voir dire*; (2) a correct response would have provided a valid basis for a challenge for cause; and (3) the Juror's failure to answer honestly demonstrated actual bias." *United States v. Kelly*, No. 21-cr-708, 2023 WL 5275154, at *5 (D.D.C. Aug. 16, 2023) (citing *McDonough*, 464 U.S. at 556; *United States v. North*, 910 F.2d 843, 904 (D.C. Cir. 1990), *superseded in part on other grounds on rehearing*, 920 F.2d 940 (D.C. Cir. 1990)).

# III.    DISCUSSION

Although Defendant's motion is not a model of clarity, she appears to object generally to the *voir dire* process insofar as the Court asked questions 30 and 31 (focusing on prospective jurors' "strong feelings" about (1) former President Trump or people who support him and (2) people who do not accept the validity of the 2020 presidential election), which she calls "critical in selecting a jury in a January 6 case," and also asked and considered prospective jurors' answers to question 32, which asked whether prospective jurors could put aside their feelings and opinions about the events of January 6 and decide the case in a fair and impartial manner based on the evidence received and the law provided.  ECF No. 80 at 1–2.  Defendant contends that

> [a]ll jurors who affirmatively admitted to having a bias against Trump supporters and/or people who have questions about the 2020 election, and then also answered that they would be fair and impartial, should have been struck for cause for at least two reasons: (1) their answers to Questions 30 and 31 should have disqualified them, and (2) their inconsistent answer to Question 32 demonstrates that they were either deliberately or at least unknowingly providing a dishonest or misleading answer to the most fundamental and material question.

ECF No. 80 at 7.  In addition, she specifically targets two empaneled jurors, asserting that juror 0001 dishonestly answered "yes" to question 32 and that juror 0374 dishonestly answered questions 30, 31, and/or 32; and one prospective juror—prospective juror 0185, who was dismissed on Defendant's peremptory strike—for dishonestly answering "yes" to question 32.  *See id.* at 3–5.

## A.    Content of *Voir Dire*

First, as noted, Defendant's counsel did not object to the *voir dire* questions the Court proposed and, ultimately, asked.  *See* ECF No. 83 at 3–5.  It is a well-established principle that "attorneys may not sit idly by, observe the occurrence of error, and then fail to bring the matter promptly to the attention of the trial court."  *United States v.  Diaz-Albertini*, 772 F.2d 654, 657

(10th Cir. 1985). Indeed, when they do, their client is generally found to have forfeited a challenge to the alleged error. *See, e.g.*, *United States v. Broadnax*, 536 F.3d 695, 699 (7th Cir. 2008) (finding that where the defendant failed to raise objections to the questions asked on *voir dire* at trial, he had forfeited the argument that the trial court committed error on that ground).

Second, also as noted, federal judges have "ample discretion" as to "the scope and content of voir dire." *West*, 458 F.3d at 6 (first quoting *Rosales-Lopez*, 451 U.S. at 189; and then quoting *Robinson,* 475 F.2d at 380). The trial judge's "duty is to conduct a thorough jury-selection process that allows the judge to evaluate whether each prospective juror is 'to be believed when he says he has not formed an opinion about the case.'" *United States v. Tsarnaev*, 595 U.S. 302, 313 (2022) (quoting *Mu'Min v. Virginia*, 500 U.S. 415, 425 (1991)). The *voir dire* in this case was designed to do just that. Both the government and the prosecution proposed jury instructions, *see* ECF Nos. 40, 47, and the Court in its *voir dire* incorporated questions specific to January 6 that were like ones Defendant proposed. *Compare* ECF No. 40 (Defendant's proposed *voir dire*) *with* ECF No. 83 at 25–28 (Court's *voir dire* specific to January 6); *see West*, 458 F.3d at 6 ("As [Rule 24(a) of the Federal Rules of Criminal Procedure] makes clear, 'federal trial judges are not required to ask every question that counsel—even all counsel—believes is appropriate.'" (quoting *United States v. Lawes,* 292 F.3d 123, 128 (2d Cir. 2002))). Indeed, questions 30 and 31 were very similar to questions Defendant suggested. *See* ECF No. 40 at 1 (proposing the following questions: "Do you have any strong opinionsor firmly held beliefs about former President Donald Trump?" and "Do you have any strong opinions or firmly held beliefs about the fact that many January 6 protestors supported Donald Trump in his challenges to the 2020 presidential election?").

Defendant's primary beef about the *voir dire* in her case centers on the juxtaposition of questions 30 and 31 with question 32. She asserts that a "yes" answer to questions 30 or 31 should

have automatically disqualified any potential juror and complains that question 32 "had the effect of negating all prior *voir dire* questions because no matter what the juror said during *voir dire*, the Court could overrule any motion from the Defense to strike for cause so long as the juror answered affirmatively to question 32."  ECF No. 80 at 1–2.  But Defendant's premise is flawed.  The trial judge's mandate in *voir dire* is to weed out "prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence."  *West*, 458 F.3d at 6 (quoting *Rosales–Lopez*, 451 U.S. at 188).  As the D.C. Circuit has recently explained:

> [A] focus on the jury pool's opinion of January 6th and its perpetrators misses the point.  We expect jurors to view significant criminal events in their hometown with an unapproving eye, whether it is the January 6th attack on the Capitol, a murder, or an armed robbery spree.  Generalized disapproval of criminal conduct—even the specific conduct at issue in a defendant's case—says nothing about a juror's ability to be impartial in deciding whether a particular individual committed a crime or not.  What the Constitution forbids is for a juror to hold a firmly entrenched view about an *individual defendant's* guilt or innocence before the trial starts.

*United States v. Webster*, 102 F.4th 471, 480 (D.C. Cir. 2024).  To be sure, questions 30 and 31 were designed to expose potential bias, but an affirmative answer to either of those questions was not automatically disqualifying because "the essential question" in January 6 cases is whether prospective jurors can "'lay aside [their] impression or opinion' of [the defendant] or events on January 6th and 'render a verdict based on the evidence presented in court[.]'"  *Id.* at 480 (first alteration in original) (quoting *United States v. Nassif*, 628 F. Supp. 3d 169, 187 (D.D.C. 2022)); *see United States v. Rhine*, 652 F. Supp. 3d 38, 51 (D.D.C. 2023) (noting that the "key question" to be asked at *voir dire* in a January 6 trial is "whether the respondent could lay aside any prior impressions and render an impartial verdict based on the testimony and evidence admitted at trial"); *United States v. GossJankowski*, No. 21-cr-123, 2023 WL 395985, at *5 (D.D.C. Jan. 25, 2023) (noting that prospective jurors' political leanings "are not, by themselves, evidence that those jurors cannot fairly and impartially consider the evidence presented" (quoting Order at 6,

*United States v. Alford*, No. 21-cr-263 (D.D.C. Apr. 18, 2022), ECF No. 46)); *see also Irvin v. Dowd*, 366 U.S. 717, 723 (1961) ("To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.").  That is precisely what question 32 asked of the prospective jurors.

Third, it is well established that a trial court has discretion "to disregard a prospective juror's initial responses suggesting bias if that juror later 'commits to lay aside those feelings and reach a verdict based on the evidence presented and the court's instructions.'"  *United States v. Kechedzian*, 902 F.3d 1023, 1027 (9th Cir. 2018) (quoting *Image Tech. Servs., Inc. v. Eastman Kodak Co.,* 125 F.3d 1195, 1220 (9th Cir. 1997)). Indeed, as the Eighth Circuit has explained:

> [A] district court does not abuse its discretion by refusing to excuse a challenged juror after the juror affirmed their impartiality and the judge favorably evaluated their demeanor.  The courts presume that a prospective juror is impartial, and a party seeking to strike a venire member for cause must show that the prospective juror is unable to lay aside his or her impressions or opinions and render a verdict based on the evidence presented in court.  "Essentially, to fail this standard, a juror must profess his inability to be impartial and resist any attempt to rehabilitate his position."

*United States v. Dale*, 614 F.3d 942, 959 (8th Cir. 2010) (citations omitted) (quoting *Moran v. Clarke,* 443 F.3d 646, 650–51 (8th Cir. 2006); *see also United States v. Gonzalez,* 272 F. App'x 117, 120 (2d Cir. 2008) (similar); *United States v. Rhodes*, 177 F.3d 963, 965 (11th Cir. 1999) (similar); *LeBouef v. Vannoy*, No. 18-cv-9495, 2019 WL 13246672, at *7 (E.D. La. Mar. 28, 2019) ("[A] potentialjuror may be rehabilitated by counsel or the court; if it becomes apparent that the juror could follow the law in accordance with his oath and the court's instructions, denial of a challenge for cause would be proper, and the challenged venireman could serve on the jury." (quoting *Chappell v. Cockrell*, 37 F. App'x 88, 2002 WL 971530, at *11 (5th Cir. Apr. 29, 2002)),

*report and recommendation adopted*, 2019 WL 13246627 (E.D. La. May 30, 2019)).  This settled principle refutes Defendant's argument.[2]

Finally, the *voir dire*, which lasted approximately a day-and-a-half, was extensive.  The Court asked the entire venire a 32-question questionnaire and asked individual prospective jurors additional questions.  *See, e.g.*, ECF No. 83 at 4–5, 35–38.  The Court also allowed the parties to examine prospective jurors.  *See, e.g.*, *id.* at 38–39.  In short, the *voir dire* in this case fell easily within the Court's "ample discretion" as to "the scope and content of voir dire."  *West*, 458 F.3d at 6 (first quoting *Rosales-Lopez*, 451 U.S. at 189; and then quoting *Robinson,* 475 F.2d at 380); *see also, e.g.*, *United States v. Rigsby*, 45 F.3d 120, 125 (6th Cir. 1995) (finding no error where, as here, "[t]he voir dire was extensive, and the judge asked all members of the panel if there was any reason they could not render a fair and impartial verdict based solely on the evidence heard during the trial.  Every juror who served on the case indicated that he or she could, and would, make a verdict based solely on the evidence and instructions."); *United States v. Morrow*, No. 04-cr-355, 2006 WL 1147615, at *16 (D.D.C. Apr. 26, 2006) (finding no error in the court's *voir dire* process where, as here, the defendant did not object to the proposed *voir dire*; "had a vital role in the iterative process leading up to the *voir dire,* suggesting potentialquestions and requesting certain modifications"; had an "opportunity following *voir dire* to conduct individualized

---

[2] Defendant argues that a prospective juror's affirmative answer to question 30 or 31 should be treated like a prospective juror's expression of "repugnant racist views" and result in an automatic strike for cause but fails to support that contention with cogent argument or legal support.  ECF No. 80 at 2.  And, as discussed above, courts have found that political leanings do not, by themselves, establish that an individual could not fairly and impartially perform his or her duty as a juror.  *See, e.g.*, *Goss-Jankowski*, 2023 WL 395985, at *5; *see also Tourangeau v. Nappi Distribs.*, No. 20-cv-12, 2023 WL 4597031, at *33 (D. Me. July 18, 2023) ("[P]arties are not entitled to jurors—whether progressive or conservative—who belong to a particular political party or who share their world view.  People come to jury service from all walks of life, with different levels of education, a variety of job skills, and a broad range of life experiences.  No one is a blank slate.  Jury duty requires that jurors be willing to impartially evaluate the evidence, find the facts, and apply the law as instructed whether they agree with it or not."), *aff'd* 110 F.4th 8 (1st Cir. 2024).

questioning on each prospective juror"; and the court asked a question specifically designed to determine whether prospective jurors thought they could be impartial).

    **B.**    **Challenges to Specific Jurors**

Recall that, to succeed on a motion for a new trial based on juror dishonesty during *voir dire*, the defendant must show that (1) the juror "failed to answer honestly a material question", (2) "a correct response would have provided a valid basis for a challenge for cause", and (3) the juror's failure to answer honestly established actual bias. *Kelly*, 2023 WL 5275154, at *5 (quoting *McDonough*, 464 U.S. at 556). There is no need to belabor this discussion because Defendant fails to clear the first hurdle: she has not shown that any juror failed to answer a material question honestly.

First, the nature of the questions that Defendant asserts were answered dishonestly present a prodigious obstacle for her. They ask for individuals' *personal views* on former President Trump, his supporters, and election deniers, as well as whether they could put those views aside and fairly and impartially perform their duties as a juror. Those are not facts that can be easily proved or disproved. *Cf., e.g.*, *McDonough*, 464 U.S. at 550 (basing a claim of juror dishonesty on a question asking whether prospective jurors or a member of their immediate families had "sustained any severe injury . . . that resulted in any disability or prolonged pain and suffering"); *North*, 910 F.2d at 903 (basing a claim of juror dishonesty on a question asking whether the prospective jurors or members of their immediate family had been a party or witness in any court proceeding or had been investigated by a federal or state authority or by legislative body or agency); *Kelly*, 2023 WL 5275154, at *1, *4 (basing a claim of juror dishonesty on a question asking whether the prospective jurors lived or worked near the Capitol); *United States v. Boney*, 97 F. Supp. 2d 1, 2 (D.D.C. 2000)

(basing a claim of juror dishonesty on a question asking whether the prospective jurors had criminal histories).

That difficulty is borne out in Defendant's brief. She has no evidence that juror 0001 lied in asserting that the juror could judge Defendant's case fairly and impartially in response to question 32, notwithstanding that the juror had formerly been on a jury in a different January 6 case. Indeed, juror 001's behavior and answers during *voir dire* belie that suggestion:

> THE COURT: So how many juries have you served on? How many?
>
> . . . .
>
> THE COURT: Just one?
>
> PROSPECTIVE JUROR: Yes.
>
> THE COURT: And was it a criminal or civil case, do you remember?
>
> . . . .
>
> PROSPECTIVE JUROR: Yes. And it just so happens to have been what took place on January 6th.
>
> THE COURT: Okay. So it was another January 6th case?
>
> PROSPECTIVE JUROR: Yes.
>
> THE COURT: In this courthouse?
>
> PROSPECTIVE JUROR: Yes.
>
> THE COURT: You've served on a jury in a January 6th case?
>
> PROSPECTIVE JUROR: Yes.
>
> THE COURT: Okay. Let me ask you, did the jury return a verdict in that case?
>
> PROSPECTIVE JUROR: Yes.
>
> THE COURT: I don't want to know what the verdict is. I want to know what it did. You've been on a January 6th case before. . . . [Y]ou understand that every trial is a new trial?

12

PROSPECTIVE JUROR: Yes.

THE COURT: Every defendant has the presumption of innocence?

PROSPECTIVE JUROR: Yes.

THE COURT: And you understand that the trial in this case would have to be based on the evidence presented in this case.  Do you understand that?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: So you couldn't use the evidence that you may have heard in the other case against the government in this case or against Ms. Young in this case. Do you understand that?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: You would have to apply the law as I instruct you, not however some other judge may have instructed you. Do you understand that?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: So you believe you could be fair, impartial, and hear—and decide this case only on the evidence and law presented in this case?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: Your next question, you answered yes to question 32, and that's the question that asks you, no matter what you may have heard or seen about events at the Capitol on January 6th, no matter what feelings or opinions you may have formed, do you believe you can put all of that aside and decide this case only on the evidence you received in court, follow the law that I give you, and decide the case in a fair and impartial manner. And you answered yes; is that correct?

PROSPECTIVE JUROR: Yes, sir.

ECF No. 83 at 139–142.[3]

---

[3] Defendant reports that "there was reason to believe that there was at least some surprise among at least one member of the jury that a juror who had previously served on another January 6 trial was allowed to serve a second time." ECF No. 80 at 6.  She does not explain, however, how such "surprise" is evidence that juror 0001 was unable to be impartial in this case.

Similarly, Defendant has not established that juror 0374 lied when, in responding to questions 30 and 31, the juror allegedly failed to acknowledge any strong feelings about former President Trump, his followers, election deniers, or January 6 that would interfere with judging Defendant fairly and impartially. The Court probed juror 0374's affirmative response to question 32 and found no reason to doubt it. *See id.* at 171–72. Defendant has since learned that juror 0374 is an attorney at a firm that filed a brief on behalf of *amici curiae* in the criminal case against former President Trump in this district and asserts that fact

> clearly demonstrates at the very least bias against those who believe that the 2020 election was stolen—if not an outright belief that everyone who was present at the Capitol on January 6, including the Defendant, was involved in a conspiracy with Donald Trump to subvert the results of the 2020 election.

ECF No. 80 at 4. That *ipse dixit* (like all *ipse dixits*) is wholly unsupported, but the Court will nevertheless briefly explain why it fails. First, the *amicus* brief, itself, says nothing about individuals who participated in the riot at the Capitol on January 6—it is focused on issues of presidential immunity. Second, there is no evidence that juror 0374 contributed to that brief. Third, the fact that juror 0374's law firm worked on a brief on behalf of *amici curiae* says nothing about the "bias[es]" of any lawyer at that firm, let alone *every* lawyer at that firm.

In any case, as the Supreme Court has stated, "The trial judge's function [at *voir dire*] . . . is not unlike that of the jurors later on in the trial. Both must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions." *Rosales-Lopez*, 451 U.S. at 188. The Court did not find any suggestion that jurors 0001 or 0374 were anything but truthful and straightforward.

The same is true of prospective juror 0185. Prospective juror 0185 did testify that a person "wearing a MAGA hat probably would not have fun" at a "meet-up group" prospective juror 0185

runs.  ECF No. 83 at 118.  But prospective juror 0185 nevertheless testified that would not interfere

with an ability to be fair and impartial:

> PROSPECTIVE JUROR: I mean, I think I can be presented with facts and make a decision based on just facts alone.
>
> THE COURT: And that's even despite your views with respect to the former president?
>
> PROSPECTIVE JUROR: Yes.
>
> THE COURT: And that's even despite your views with respect to the presidential election of 2020 and whether or not it was valid?
>
> PROSPECTIVE JUROR: Yes.

ECF No. 83 at 110.  The Court saw no indication that prospective juror 0185 was prevaricating.

More fundamentally, Defendant's argument is legally erroneous.  Defendant exercised a

peremptory challenge to have prospective juror 0185 dismissed.

> Peremptory challenges "are but one . . . means to the constitutional end of an impartial jury and a fair trial"; they are not a constitutionally protected right in themselves.  Thus, a defendant is not deprived of his rights when he uses peremptory challenges to strike a juror that the district court should have removed for cause.

*United States v. Nosley*, 62 F.4th 1120, 1126–27 (8th Cir. 2023) (alteration in original) (citations

omitted) (quoting *Georgia v. McCollum*, 505 U.S. 42, 57 (1992)); *see also Webster*, 102 F.4th at

484 ("[T]he Supreme Court has rejected the proposition that 'a defendant's peremptory challenge

right is impaired when he peremptorily challenges a potential juror whom the district court

erroneously refused to excuse for cause[.]'" (second alteration in original) (quoting *United States

v. Martinez-Salazar*, 528 U.S. 304, 310 (2000))).  That is, the fact that a defendant had to exercise

a peremptory challenge to remove a prospective juror she thinks should have been stricken for

cause is not a basis to grant a new trial.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure is **DENIED**.

**SO ORDERED.**

Date: October 25, 2024.

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE