## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| v. | ) | 1:23-cr-241 |
| | ) | |
| **YOUNG** | ) | |
| _____ | ) | |

### DEFENDANT'S SENTENCING MEMORANDUM

Defendant Cindy Young, by and through counsel, respectfully submits this sentencing memorandum and says as follows:

### INTRODUCTION

Attorney General Merrick Garland stated that there were two categories of protestors on January 6, violent and peaceful. Cindy was the latter. Two FBI agents investigated her case. Both testified at trial. Agent Wesley Garland admitted that after interviewing her and reviewing evidence he declined to open a case against her. Agent Matthew Giftos admitted that after extensive review of her entire file, including all videos of Ms. Young on January 6, he concluded that she can be seen "peacefully" walking through the Capitol.

The Government for its part wants to portray Ms. Young as a violent insurrectionist, even though they were unable to bring charges against her for anything above a misdemeanor. This was not for lack of trying. Despite its best efforts, the Government was only able to charge her with the familiar January 6 misdemeanors, and not the felonies, 18 U.S.C. 231(a)(3), 18 U.S.C. 1512(c)(2), or 18 U.S.C. 111(a) or (b). Accordingly, the appropriate guidelines that should be applied are the sentencing guidelines for "Trespass," Section 2B2.3. According to JSIN, there are no defendants who were sentenced under this guideline who received more than 1-2 months

detention. Moreover, given Ms. Young's age and personal history, even if a sentence of detention were appropriate, a sentence of home detention is appropriate, not incarceration in a federal prison.

## SENTENCING POST BOOKER

Sentencing courts are no longer constrained solely by the federal sentencing guidelines. *United States v. Booker,* 543 U.S. 220 (2005). The guidelines are now advisory and are but one of many factors. The sentencing Court "may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 39 (2007). An appropriate sentence is one that is "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Aside from the guidelines, Section 3553(a)(2) looks to other factors such as the nature and circumstances of the offense, personal history and characteristics, the need for the sentence to reflect the seriousness of the offense and promote respect for the law, the need for adequate deterrence, and the need for unwarranted sentencing disparities.

## THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

On January 6, 2021, Cindy Young was part of the crowd that marched peacefully on Pennsylvania Avenue from the Elypse to the Capitol. She joined the crowd that climbed the stairs on the Northwest side of the Capitol and entered the building through the Senate Wing door. She was NOT at the front of the crowd as the Government suggests; the first people came through the Senate Wing doors at 2:12, and Young entered more than 10 minutes later after dozens and dozens of people had already entered.

After she entered, she separated herself from the more raucous crowd that entered the Crypt. She walked peacefully between the velvet ropes in the Rotunda and Statutory Hall. When

she encountered a police officer in the Statutory connector, she stopped. As the crowd inside the building continued to grow, she moved to the side and waited. When she had a chance, she asked a police officer for directions. She left the crowd and made her way to an exit. She left the building and went home.

She did not commit any acts of violence or vandalism. Whenever she encountered a police officer, she was respectful and followed directions. She left the building on her own before the police began clearing the building.

**PERSONAL CHARACTERISTICS AND ABSENCE OF CRIMINAL HISTORY**

Ms. Young is a 67-year-old mother and grandmother with no criminal history. As demonstrated by the outpouring of letters that are attached as Exhibit A, she is a valued and cherished member of her community. Ms. Young had a difficult childhood. As a baby, she survived a deadly plane crash in which her mother was killed. She was raised as an orphan in an abusive and alcoholic home. She had a troubled childhood that led to years of alcoholism and drug addiction. She climbed her way out of addiction into recovery and even assisted others through support groups like Alcoholics Anonymous. She has now been clean and sober for over 37 years, but she, like all addicts, continues to struggle with her addiction every day. She continues to regularly counsel others in her community who are also struggling with addiction.

Ironically, the PSR recommends that if Ms. Young is sentenced to prison, she should be ordered to participate in NRDAP, a program for inmates struggling with substance abuse. Ms. Young has spent the last 37 years creating a routine to maintain sobriety, including a supportive community. Sending her to prison at this stage in her life, especially for a period of months as the Government recommends, would only put her at risk of depression and influence that could lead to a relapse. If the goal of the criminal justice system is to rehabilitate people who suffer with

addiction, it would serve the opposite interest to remove Ms. Young from her current supportive environment and disrupt her life for a period of months, especially given Ms. Young's age.

Ms. Young has been effectively on probation for almost a year and a half. During that time, she has consistently tested negative for drug use. She also had no violations of any kind. She has been restricted from traveling without permission and has had several other rights and privileges suspended during that time.

The Federal Government is aware of the negative impact that incarceration has on those who have recovered from the scourge of substance abuse. According to the National Institute of Health:

> Illicit drugs are used in jails and prisons despite their highly structured, controlled environments, but even enforced abstinence can mislead criminal justice professionals as well as addicted persons to underestimate the vulnerability to relapse post incarceration. On release from prison or jail, addicted persons will experience challenges to their sobriety through multiple stressors that increase their risk of relapsing to drug use. These include the stigma associated with being labeled an ex-offender, the need for housing and legitimate employment, stresses in re-unifying with family, and multiple requirements for criminal justice supervision.[1]

Ms. Young's lack of criminal history and the extensive time on *de facto* probation should be considered when deciding an appropriate sentence.

## THE NEED FOR UNWARRANTED DISPARITIES

The Court requested that the parties include comparators of other January 6 sentences. As the number of January 6 cases is approaching 1,600, the Court can compare apples to apples based on the characteristics of the individual defendants and their conduct on January 6. For the purpose of comparators, there is no distinction between defendants convicted at trial and those who pled guilty.

---

[1] https://pmc.ncbi.nlm.nih.gov/articles/PMC2681083/#:~:text=On%20release%20from%20prison %20or,of%20relapsing%20to%20drug%20use.

> It is clearly unconstitutional for a trial judge to increase the sentence of a defendant because he chose to go to trial rather than plead guilty. The Supreme Court has stated, "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). "In a series of cases beginning with *North Carolina v. Pearce,* 395 U.S. 711, 23 L.Ed.2d 656 and culminating in *Bordenkircher v. Hayes,* the Court has recognized this basic — and itself uncontroversial — principle." *United States v. Goodwin,*457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982).

*U.S. v. Jones*, 997 F.2d 1475, 1480-81 (D.C. Cir. 1993). According to the Government, any defendant who entered the restricted area is automatically guilty of all four of the boilerplate January 6 misdemeanors. Accordingly, there is no distinction between a defendant who is convicted of all four and a defendant who was only convicted with one or two misdemeanors as a reward for foregoing their right to trial and accepting a plea deal with the government.

The following chart includes cases of female January 6 defendants older than 65 years old, like Ms. Young, who were convicted either by plea deal or by trial. All but one received no time in prison.

| | |
|---|---|
| HEMPHILL, Pamela Anne | 1:21-cr-00555 |
| MCNICOLL, Lois Lynn | 1:21-cr-00468 |
| LAVRENZ, Rebecca | 1:23-cr-00066 |
| TAGARIS, Jody Lynn | 1:21-cr-00368 |
| PARKS, Jennifer Ruth | 1:21-cr-00363 |
| KUECKEN, Deborah Anne | 1:23-cr-0006- |

**Pamela Hemphill.** According to the Government's sentencing memo, she "walked to the Capitol building and was in the front of the crowd that confronted U.S. Capitol Police and other

law enforcement officers" on the East side of the Capitol. 1:21-cr-555, ECF 32, at 6-7. Hemphill allegedly breached the police line not once, not twice, but three times. She entered the building and walked through the Rotunda and other areas. Unlike Ms. Hemphill, Ms. Young did not breach any police lines in or out of the Capitol. The Government also accused Ms. Hemphill of falsely claiming that she was forced into the building. *Id.* at 25. Ms. Young never claimed that she was forced into the building and instead freely volunteered to the FBI without hesitation that she entered the building on her own volition. With all that, the Government compared Ms. Hemphill to the case of *United States v. Scavo,* 1:21-cr-254, and requested, like Mr. Scavo, that Ms. Hemphill be sentenced to only 60 days incarceration, which is what the Court ultimately imposed. *Id.* at 25.

   *Lois Lynn McNicoll.* According to the Government's sentencing memo, she entered the Capitol building at 2:55, walked through various areas of the building, and remained in the building until 3:33, for a total of 38 minutes. 1:21-cr-468, ECF 28, at 10-11. Ms. Young entered the building at 2:23, and exited at 2:48, for a total of 25 minutes. Further, unlike Ms. McNicoll who had to be "escorted from the Capitol," Ms. Young asked a police officer for directions, left the crowd, and exited the building by herself and on her own volition without police escort, before the police began to physically remove people from the building. The Government sought only 14 days incarceration, but the Court ultimately sentenced her to no time in prison.

   *Rebecca Lavrenz.* Ms. Lavrenz entered the building through the Columbus doors at 2:43, spent a few minutes in the Rotunda, and left through the Columbus doors at 2:53. The Court sentenced her to no time in prison.

   *Jody Lynn Tagaris.* According to the Government's sentencing memo, Ms. Tagaris entered the Capitol through a window next to the Senate wing door "several minutes" after the

initial breach, unlike Ms. Young who entered through the door more than ten minutes after the initial breach. Tagaris entered the Senate break out room and remained until she had to be ordered to leave by the police. Tagaris remained in the building for 20 minutes. 1:21-cr-368, ECF 20, at 6-7. Unlike Ms. Young who walked between the velvet ropes, confined herself to areas that are open to the public during normal days, and asked for directions from law enforcement, Ms. Tagaris "did not limit herself to areas of the Capitol that are accessible on days when the building is open to the public and instead entered a protected space." *Id.* at 9.  Further, because she sat at a desk, the Government compared her to Richard Barnett, who also sat at a desk which, according to the Government, "represents a show of intimidation, an attempted display of power, above and beyond entering the building." In *Tagaris,* the Government made the very same arguments for incarceration as it makes here, namely, "even if Ms. Tagaris did not personal engage in acts of violence, she was aware of the violent conduct of others," and "she knew the event could be dangerous," and "a mob isn't a mob without the numbers." The Government asked for 30 days incarceration, but she was ultimately sentenced to no time in prison.

*Jennifer Ruth Parks.* Ms. Parks entered the Capitol Building through an entrance where the doors had been broken and opened. She spent 15 minutes in the building. The Government asked for 30 days home detention, but she was sentenced to no time in prison.

*Deborah Anne Kuecken.* Ms. Kueken entered the building through the Columbus doors and left the same way after a few minutes. She was sentenced to 30 days home detention with no time in prison.

On October 23, 2024, Shawn Daniel Mahoney, 1:24-cr-98, a January 6 defendant with a criminal record who is also from Bristol, New Hampshire, was sentenced to no prison time, 24 months of probation, including 45 Days of Home Detention, 60 hours of community service

within 12 months, a special assessment of $10 imposed as to each count, and restitution in the amount of $500. Mahoney's case is similar in many ways to Ms. Young's but in many ways it is objectively far worse. Mr. Mahoney ascended to the Capitol Building along the same path as Ms. Young, but Mr. Mahoney was ahead of Ms. Young and was among the first people to do so. He entered the building through the Senate Wing doors at 2:16, almost 7 minutes before Ms. Young. Unlike Ms. Young who left the crowd and went up stairs, he was part of the larger crowd that entered the Crypt and pushed through the police line. Unlike Ms. Young who did not enter any congressional offices, Mr. Mahoney entered an office, ate part of a stolen cupcake, and then "placed the half-eaten cupcake on a bust of Winston Churchill." Mr. Young was in the building for about the same amount of time as Ms. Young. Unlike Ms. Young who cooperated in every way with the FBI, Mr. Mahoney refused to answer questions about the person who entered the Capitol with him. Mr. Mahoney also had an extensive criminal history, including multiple arrests after January 6, 2021. The Government's sentencing memo in that case brought as comparators *Tippett,* a January 6 defendant with a prior criminal record who was sentenced to only 30 days in prison, and *Adkins,* a January 6 defendant with a prior criminal history who was sentenced to only 12 days of intermittent confinement.

Given the sentences for Mahoney, Tippett and Adkins, all of whom have prior criminal histories, Ms. Young, who has no prior criminal history, should not be sentenced to any incarceration.

The Government's comparators are not apples to apples comparisons. The Government cited other misdemeanor defendants who received 8 or more months incarceration, but these cases are easily distinguishable, especially regarding the age of the defendants.

Kirstyn Niemela (1:21-cr-623), "a 35-year-old construction worker," (*see Gov. Sentencing Memo,* ECF 122), was notably almost half Ms. Young's age. Significantly, she also had a criminal history that contained a prior conviction for disorderly conduct "that involved violence," as well as two other arrests. This is not a proper comparator for Ms. Young who has no criminal history. Anthony Vo (21-cr-509) was 31 years old at the time of this sentencing, and Jesus Rivera (1:21-cr-60) was 38.

Ms. Young's age should be given significant weight in determining her sentence, particularly the amount of time, if any, of incarceration. In a study by the Department of Justice from 2015 titled, "The Impact of an Aging Inmate Population on the Federal Bureau of Prisons,"[2] the Department of Justice "found that limited institution staff and inadequate staff training affect the BOP's ability to address the needs of aging inmates. The physical infrastructure of BOP institutions also limits the availability of appropriate housing for aging inmates. Further, the BOP does not provide programming opportunities designed specifically to meet the needs of aging inmates." *Id.* at 1. Though some of the issues have been addressed, the fact remains that a month of incarceration for a young and healthy individual is not the same as a month for a senior citizen. The Government proves this point by including Rebecca Lavrenz, the so-called "praying gramma" who was punished severely with a fine in excess of $100,000, something that was not imposed even on defendants who assaulted police officers, and yet she was not sentenced to even a day in prison.

**RECOMMENDATION FOR SENTENCING**

---

[2] https://oig.justice.gov/reports/2015/e1505.pdf.

Ms. Young requests that this Court impose a sentence at the bottom of the Guidelines and sentence Ms. Young to 6 months of probation, 25 hours of community service, and a $500 fine. This sentence would be consistent with January 6 protestors who shared similar characteristics. This would satisfy the Government's desire for a harsher punishment for January 6 defendants; 6 months of probation, 25 hours of community service, and a $500 fine is a harsher sentence than the punishment she would have received, if any, for the same conduct at other events. As one example, Ruben Camacho received only 48 hours of community service for assaulting a female law enforcement officer engaged in the performance of her official duties. Jason Charter, 1:20-cr-135, assaulted a police officer and a civilian, and destroyed a statute belonging to the federal government in a restricted area during a civil disorder in June of 2020, and the Government only asked for 45 days in prison. He was sentenced to only probation and $2,600 in restitution. Comedian Amy Schumer stormed a building on Capitol Hill and was only given a $50 fine.

When considered in the context of January 6 punishments, this recommendation seems light. But when compared to what Defendants like Camacho and Charter received for conduct that is objectively worse, Ms. Young's sentence is harsh and should satisfy the need for general and specific deterrence.

It is also worth considering the unsolicited letter to the Court from New Hampshire State Representative Tom Ploszaj, included as Exhibit B:

> I would respectfully like to offer my thoughts in the hope that the Court could, in its sentencing of Cindy Young, consider that this may be an appropriate time to take a step towards the healing and sufferings that our country, its foundations, and its people have endured for almost four years since that day of January 6, 2021. I can envision a sentencing that could be the first path of healing by working towards rehabilitation and coming together as a nation such as President Abraham Lincoln had done on December 8, 1863 with his Proclamation of Amnesty and Reconstruction.

**CONCLUSION**

WHEREFORE the Defendant, Cony Young, prays this Court will grant the relief sought herein.

DATED: October 31, 2024

Respectfully submitted,

/s/ Jonathan Gross
Jonathan Gross
Bar ID: MD0162
2833 Smith Ave, Suite 331
Baltimore, MD 21209
(443) 813-0141
jonathansgross@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify on this 31 day of October 2023, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ Jonathan Gross

Jonathan Gross