UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES** ) | |
| ) | |
| v. ) | Case No. 1:23-cv-241 |
| ) | |
| **YOUNG** ) | |
| ) | |
| ) | |

### REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE

Defendant Cindy Young requests that the Court allow her to attend the inauguration of President Donald Trump. In support, she asserts that she is not a danger to the community. Other than the misdemeanor charges for January 6, she has no prior criminal history. Further, Magistrate Judge Zia M. Faruqui who has set the conditions of release for hundreds of January 6 defendants recently set the conditions for multiple January 6 defendants at an initial appearance hearing held on December 17, 2024, and he expressly permitted January 6 defendants to attend the inauguration, and the Government did not object. *See, e.g., United States v. McClain,* 1:24-mj-281 (hearing held on December 17, 2024).

With regards to Ms. Young, the Government claims with a straight face that "Young presents a danger to the D.C. community." The Government and the Court know that Ms. Young is not a danger to the D.C. community or any community. She is a senior citizen who, according to the FBI agent who testified at her trial, can be seen on video walking "*peacefully*" through the Capitol on January 6, 2021.

She presents no more of a "danger to the D.C. community" than Jason Charter, yet Jason Charter was never barred from D.C.. Case No. 1:20-cr-135. Like Ms. Young, Charter was also

1

charged under 18 U.S.C. 1752. He was seen on video taken by WUSA9 news1[1] in the late evening hours of June 19, 2020, standing in a restricted area over a historic statue that had just been toppled by the mob and

> pouring an unknown liquid onto the statue. He is then observed waving others away from the statue, and squatting down behind the statue where his hands are not visible. Seconds later, the statue catches fire. Charter is seen standing over the flames as it burns. Charter then continues to pour an unknown liquid onto the statue.

*Id.,* ECF 1-1. Charter is then seen "lighting a cigarette in the flames engulfing the Pike Statue."

According to the Government's statement of facts:

> The Pike Statue is the property of the United States and it sustained significant damage due to the actions of the individuals involved in the aforementioned offense. … National Mall and Memorial Parks division of the National Park Service who is responsible for managing the Pike Statue (NPS) has conducted an examination of the damage done to the statue and advised that their estimated cost to repair the statue itself, including the removal of graffiti from the base of the statue, restoration of the burnt façade of the statue, and reinstallation of the statue on its pedestal, is approximately $250,000.

On June 22, 2020, three days after he lit his cigarette from the flames engulfing the Pike Statue, Charter returned to D.C. to destroy another historic monument.

> CHARTER is seen at approximately 7:48 PM standing inside the gated area of the Jackson Statue and directing others. CHARTER is seen grabbing ropes that are attached to the statue and adjusting them. CHARTER is boosted up onto the statue by an unknown subject and then appears to request ropes from people on the ground level. A yellow tow strap is handed to CHARTER and he unwraps it and prepares it to be attached to the statue. CHARTER hands the strap to an unknown subject that attaches the strap to the statue. CHARTER is then handed a packaged yellow rope. CHARTER unwraps the rope and attaches it to the Jackson Statue. CHARTER grabs ropes attached to the statue and uses them to descend the statue.

*Id.* According to the Government's statement of facts:

> The Jackson Statue is the property of the United States and it sustained significant damage due to the actions of the individuals involved in the offenses described

---

[1] Available at https://www.wusa9.com/article/news/local/protests/confederate-statues-dc-roads-buildings-andmonuments/65-819b1d16-1d23-4005-b5f4-f71ca6698910 (last visited Dec. 19, 2024)

> herein. … While NPS has not yet completed their estimate of all the damage, NPS has advised law enforcement that the historic cannon carriages at the base of the statue were irreparably damaged, that some parts of the statue were bent and that other parts of the statue sustained damage from blunt objects and chemicals. NPS further advised your affiant that the estimated replacement cost for the historic cannon carriages is $76,000 and that the estimated cost to repair one of the bent portions of the statue is $2,000.

*Id.*

On June 26, 2020, he returned to D.C. and committed an assault. *Id.*

> On June 26, 2020, at 1800 hours, a protest was held within Lincoln Park adjacent to the 1200 block of East Capital Street, Northeast, Washington, DC. CHARTER encountered V-1, and is alleged to have assaulted V-1. V-1 responded to USPP District One and filed an assault report with Officer Adams. At 01:00 AM on June 27, 2020, CHARTER called the First District police station and spoke with Officer Adams. CHARTER admitted being involved in an incident at Lincoln Park and indicated that he would like to make a statement to tell his side of the incident.

*Id.*

Thankfully, not a single January 6 defendant is even accused of desecrating one of the historic statues or paintings in Statutory Hall, the Rotunda, or elsewhere in the Capitol, the Capitol grounds, or anywhere in Washington, D.C. It is hard to imagine the sentence that would have been imposed if one of the January 6 defendants had done so. Dominic Pezzola broke a window and is currently serving a sentence of ten years. Richard Barnett put his feet on Nancy Pelosi's staffer's desk and is currently serving a sentence of four and a half years.

Jason Charter and his associates engaged in conduct that "obstructed, impeded, and interfered with" law enforcement during a civil disorder but were not charged for doing so..

> [During] an organized effort to attempt to remove the Jackson Statue from its base and damage it, including the cannons at the statue's base[,] Many individuals were standing around the statue with arms interlocked to create a blockade preventing the police from approaching the statue.

*Id.* Hundreds of January 6 defendants were charged with, convicted of, and are currently serving years in prison for allegedly violating 18 U.S.C. 231(a)(3), which makes it a felony to commit "any act" that obstructs, impedes, or interferes with law enforcement during a civil disorder.

January 6 was subject to the most extensive investigation in the history of the world, and Ms. Young in particular was investigated for months by the FBI. Yet the Government did not find any evidence that she committed any acts of vandalism or violence, and not for lack of trying. Despite its best efforts, all the Government could charge her with was the four boilerplate January 6 misdemeanors for which she was subsequently sentenced to 4 months in prison, $500 restitution, a $4,000 fine, and a $70 special assessment.

Jason Charter participated in a riot and led a group of other rioters in destroying a historic statue. Then he returned a few days later and led another group of rioters in destroying another historic statue. Then he returned yet again a few days later and committed an assault. Destroying statues and assault can be the basis for felony charges. But Charter did not commit his crimes on January 6, 2021, so the Government dismissed two statue-destroying charges and never brought any assault charges. The Government offered him a generous plea deal for a single misdemeanor - disorderly conduct under 18 U.S.C. 1752(a)(2). He was sentenced to three years of probation, $2,600 in restitution and $25 special assessment. He was directly involved in causing as much as $500,000 in damage - one quarter of the $2 million in total damages that was allegedly caused by literally thousands of January 6 defendants - and yet he was required to pay only $2,600 and he received no fine, unlike Ms. Young who caused no damage, and yet was sentenced to pay $500 in restitution and a $4,000 fine.

As part of his plea deal, in addition to dismissing the charges for destroying statues, the Government also agreed to dismiss not one but two additional criminal cases pending against

Charter: one for assaulting another citizen, and one for "assaulting a United States Park Police officer while engaged in the performance of official duties, during which incident on October 3, 2020, the defendant grabbed an officer's tactical vest while officers were arresting another individual." Had he engaged in the October 3, 2020 conduct at the Capitol on January 6, 2021, he would have been sentenced to years in prison.

Ironically, the Government argued in its sentencing memo for Charter that Charter's Sentencing Guidelines for his violation of 18 U.S.C. §§ 1752(a)(2) and 1752(b)(2), should be calculated under the general guidelines for "trespassing," U.S.S.G. § 2B2.3(a), for a Base Offense Level of 4. *See* 1:20-cr-135, ECF 45. Ms. Young argued in her sentencing memorandum that her guidelines should also be calculated under § 2B2.3(a), but the Government argued that Ms. Young should be held to a different standard. Under the Government's special January 6 rules, the guideline for § 1752(a)(2) is § 2A2.4, which falls under the general category of "assault," and which designates a base offense level of 10.

Charter assaulted multiple people and destroyed valuable historic statues but the Government treats him like a trespasser, while Ms. Young trespassed but the Government treats her like an assaulter. That, in a nutshell, is the January 6 jurisprudence.

Returning to the original question that is the subject of Ms. Young's motion is whether the Government is to be taken seriously when it claims to oppose Ms. Young request to attend the inauguration of President Trump because she "presents a danger to the D.C. community." Jason Charter is just one of hundreds if not thousands of cases that demonstrate that the Government is not at all concerned with the safety of the D.C. community. If it were, Charter would have been treated at least as harshly as January 6 defendants are being treated. Charter - a serial rioter, vandal, and assaulter - posed a clear and present danger to the D.C. community, yet

the Government allowed him to roam free to assault citizens and police while on pretrial release. Moreover, not only was he permitted to roam around D.C., his pretrial conditions *required* him to stay in D.C. 1:20-cr-135, ECF 7. No concern was shown for the citizens or police of D.C. that Mr. Charter victimized.

It should be obvious to any fair minded person that the Government does not consider Ms. Young to be a menace to society that presents a danger to the D.C. community. Instead, the Government seeks to gratuitously punish her because she is a January 6 defendant and to deprive her from the enjoyment she would experience from attending the inauguration before she is summoned to report to prison.

In sum, Ms. Young is not a danger to the community, the Government's feigned concerns are pretextual, and Judge Faruqui has expressly allowed January 6 defendants to attend the inauguration. For those reasons, the Court should permit Ms. Young to attend the inauguration. .

Dated: December 19, 2024,  Respectfully submitted

/s/ Jonathan Gross
Jonathan Gross
Bar ID MD0162
2833 Smith Ave, Suite 331
Baltimore, MD 21209
(443) 813-0141
jonathansgross@gmail.com

*Counsel for Cindy Young*

6